Manxy, J.,
dissenting. Not concurring-m the opinion of a majority of the Court, I will state briefly the reasons of my non-concurrence.
. The military bill of February, 1884, under which the ■ service of the petitioner is claimed, prescribes the term of service' “for the war” too plainly and positively to admit of abridgment by implications in favor of any persons embraced within its provisions. ’ ' •
The part of the bill directly bearing upon the question is the first section, and is in the following words : “That from and after the passage-of tin’s act all white men, residents of the Confederate States, between the'ages of 17 and 50, shall be in the military service of the Confederate States, for the war.” ■
Here, manifestly, all persons between the ages of 17 and 50 are declared to belong to the military forces of the country, for the war. That tho Congress.in this conscription of persons was regarding them as a class seems to he probable. A proper cxeyesii; of the statute, according to the view which I talro of if, requires this conce.;,noil. But it does not follow that a continuous application of the law •to the-class would enlarge or let out any one -embraced within its folds. The obligation to service under it is not during their continuance in the class, but during fita, war,
A prescribed ago is an anomalous and novel limitation to .military service ; for a term of years, for the war, or for art expedition,'ir> more usual and convenient. In. our country, whore there is no provision for beeping a register of births, and where, consequently, these records are very irregularly kept, and in most cases soon lost or destroyed, there is no fact move liable to controversy, and which, may sbe affected by a greater variety of proof, than the age -of a person. How arc questions of ago to he determined? *11 It wi^ not do to make them depend upon the allegations of soldiers or the will of the commanders ; and it follow’s that some tribunal must be* established and set daily t© adjudicate cases as they arise. • In the beginning, whea enrolling men/or service, where t:me and.opportunity are afforded for investigation, questions of age are found sufficiently vexatious .and troublesome. In the midst of campaigns,- such investigations would be utterly impracticable!
My inference is, that Congress could not have intended to prescribe such "a limit to tho service of' the senior reserves, and I think it did not,
The true and reasonable interpretation of tjjS law, then,_ is, that it places in tbe military service of the Confederate States, all persons within tbe prescribed ages for the. war. .There is no other iuterpetratiOn which' will give the ordinary signification to the words used. And, as thp intention of this, as well as ail other laws on the subject, is to raise an army for fall and complete service in tbe field, it is believed to oe within the purview of the law, that from time-to time, as the junior reserves arrive at the age of 18, they may be conscribad for general service. When once so conscripted suri classed, there is no provision of the law. and no rule of the military service, I take it, whereby they beeo*me entitled at any time to ho subordinated or discharged, except for disability.
The fifth section of the bill (11th February) has been referred to as throwing some light on the question before us. I perceive but little in it to aid us. It seems to be an instance,'not unfrequently occurring in legislation, where a proviso is ma;le to’emasculate completely the section or part of the law to which it is appended. This is all.
*12 In the law of the 10th April, *1862, authorizing the President to call into service persons between the ages of 18 aad4 35, it is provided, that the President may call those thereafter arriving at 18., and when called, all should serve their full term. The two acts, that of April, 1862, and the one now before us, have accomplished, in my judgmopt, the same objects, by different words. The same necessities were upon the country, .and it is proper to presume that similar provisions of law were intended to be maáe to meet them. The two laws were probably constructed by different minds, and hence the-.differenee of language. The intent seems to have boon the same, and the comprehensive and forcible words used in the act of February last, sufficiently declare such intent.
The words, for the war, or any similar words in any other connexion in the section, might be of ambiguous import. But in the connection in which they ntand, they prescribe a -term of -service, aw already stated, too plainly to be mistaken, and which I do not feel at liberty,to abridge, from anything which I find of apparent inconsistency. in the law, or from any. considerations of public, policy.
My opinion is, that the petitioner is rightfully under the control of the military authorities, and is not entitled to be discharged. *. i